

# EXHIBIT A



# Board of Education | City of Chicago

Susan J. Narrajos
Secretary

Issalma C. Franco
Assistant Secretary

Vanessa Hernandez
Assistant Secretary

November 5, 2025

REC'D CBOE LAW DEPT
'25 NOV 6 PM 3:40

Elizabeth K. Barton
Acting General Counsel
Law Department – Suite 900

Dear Ms. Barton:

I am transmitting herewith the attached Summons regarding Kelly Tarrant v. Chicago Board of Education. Case No. 2025 L 013115.

Officer Jones delivered the attached in person and it was received on November 5, 2025.

Sincerely,

Issalma C. Franco
Assistant Secretary

ICF: tf
Attachments

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, Y

# SUMMONS

## IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

**COUNTY:** Cook ▼
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:**   Kelly Tarrant
*Who started the case.*     *First, Middle, and Last Name, or Business Name*

**DEFENDANTS/RESPONDENTS:**   Chicago Board of Education
*Who the case was filed against.*

*First, Middle, and Last Name, or Business Name*

**FILED**
10/22/2025 11:45 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L013115
Calendar, Y
35002262

2025 L 013115
**Case Number**

FILED DATE: 10/22/2025 11:45 AM 2025L013115

## The Defendant/Respondent named above has been sued. Read this form for information about how to respond to this lawsuit. Also see page 4 for next steps.

**For the person filling out this form: Read all instructions in this box.**

This *Summons* can only be used for certain types of cases. See the *How To Serve a Summons* Instructions for more information: ilcourts.info/how-to-summons.

Check 1 if this is a 30-day summons or check 2 if this is a date certain summons. Fill in all the information in 1 or 2.

- Use a **date certain summons** if you are asking for money of $50,000 or less or recovery of your personal property that you think the Defendant has, and for some mandatory arbitration cases. In 2, fill in your court date and how to go to court. You may get the court date when you e-file or you may need to ask the Circuit Clerk's office.

- Use a **30-day summons** for most other case types.

Complete the rest of the form with the Defendant/Respondent's information and information about the lawsuit.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

☑ **1. 30-DAY SUMMONS**

To participate in this case, you must **file** your *Appearance* and *Answer/Response* forms with the court within 30 days after you are served with this *Summons* (not counting the day of service) by e-filing or at:

Court Address:   Richard J. Daley Center - 50 W. Washington, Chicago, IL 60602
*Courthouse Street Address*

**- or -**

☐ **2. DATE CERTAIN SUMMONS**

*Your court date is listed below. Information about getting a court date and how to attend is available from the Circuit Clerk. You can find their contact information at ilcourts.info/clerks.*

To respond to this *Summons*, you must **attend court** in one of the ways checked below on:

_____ at _____ ☐ a.m. ☐ p.m. in _____.
*Month, Day, Year*     *Time*     *Courtroom Number*

*This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts. Forms are free at ilcourts.info/forms.*

## Going to Court for a Date Certain Summons

Court dates may be in-person, remote, or a combination of in-person and remote.

☐ **In person** at: _____
    *Courtroom Address*                                     *Courtroom Number*

☐ **Remotely** (video or telephone)

**By video conference** at: _____
        *Video Conference Website*

Log-in information: _____
        *Video Conference Log-in Information, Meeting ID, Password, etc.*

**By telephone** at: _____
        *Call-In Number for Telephone Remote Appearance*

To find out more about remote court options:

Phone: _____  or  Website: _____
    *Circuit Clerk's Phone Number*                    *Website URL*

_____     _____

## 3. ADDITIONAL INFORMATION ABOUT THE LAWSUIT

a. I am asking for the following amount of money in my *Complaint/Petition*: $ 5,000,000.00_____.
    *(Enter 0 if you are not asking for money)*

b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession) in my *Complaint/Petition*.

☐ Yes  ☑ No

## 4. DEFENDANT/RESPONDENT'S INFORMATION

a. Number of Defendants/Respondents being served:

☑ I am having 1 Defendant/Respondent served and their information is on this form below.

☐ I am having more than 1 Defendant/Respondent served. The first is listed below. I have attached *Additional Defendant/Respondent Address and Service Information* forms for the following number of additional Defendants/Respondents: _____.
        *Number*

b. First Defendant/Respondent's **primary address/information** for service:

Name: _____Chicago Board of Education_____
    *First, Middle, and Last Name, or Business Name*

Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

_____Sean B. Harden - President of the Chicago Board of Education_____
    *First, Middle, and Last Name*

Street Address: _____42 W. Madison Street, Garden Level_____
        *Street, Apt #*

City, State, ZIP: _____Chicago_____     IL_____     60602_____
        *City*                                *State*      *Zip*

Telephone: _____     Email: _____

FILED DATE: 10/22/2025 11:45 AM · 2025L013115

Case Number _____ 2025 L 013115 _____

FILED DATE: 10/22/2025 11:45 AM  2025L013115

c. **Second address** for this Defendant/Respondent:

☐ I do **not** have another address where the Defendant/Respondent might be found.

☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address: _____
*Street, Apt #*

City, State, ZIP: _____
*City*  *State*  *Zip*

Telephone: _____  Email: _____

d. Person who will serve your documents on this Defendant/Respondent:

☑ Sheriff in Illinois  ☐ Special process server  ☐ Licensed private detective

☐ Sheriff outside Illinois: _____
*County & State*

_____

## PLAINTIFF/PETITIONER INFORMATION:

*Enter your information below.*

Name _____ Kelly Tarrant _____
*First, Middle and Last Name*

Registered Agent's name, if any ___ Anthony J. Peraica & Associates, Ltd. (attorney for Plaintiff) ___
*First, Middle and Last Name*

Street Address _____ 5130 S. Archer Avenue _____
*Street, Apt #*

City, State, ZIP: __ Chicago _____ IL _____ 60632 __
*City*  *State*  *Zip*

Telephone: (773) 735-1700 _____  Email: support@peraica.com _____

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

**STOP** | The Circuit Clerk and officer or process server will fill in this section.

**To be filled in by the Circuit Clerk:**

Witness this Date: _____

Clerk of the Court: __10/22/2025 11:45 AM Mariyana T. Spyropoulos__
_____

*Seal of Court*

**To be filled in by an officer or process server:**

Date of Service: _____

*Fill in the date above and give this copy of the Summons to the person served.*

---

**Note to officer or process server:**

○ If **1** is checked, this is a 30-day *Summons* and must be served within 30 days of the witness date.

○ If **2** is checked, this is a date certain *Summons* and must be served at least 21 days before the court date, unless 3b is checked yes.

■ If **2** is checked **and 3b** is checked yes, the *Summons* must be served at least 3 days before the court date.

○ Fill in the date above and give this copy of the *Summons* to the person served.

○ You must also complete the attached *Proof of Service* form and file it with the court or return it to the Plaintiff.

ATJ 1503.8  Page 3 of 6  (08/25)

*Case Number* _____ 2025 L 013115 _____

FILED DATE: 10/22/2025 11:45 AM    2025L013115



# WHAT'S NEXT

## NEXT STEPS FOR PERSON FILLING OUT THIS FORM:

When you file a lawsuit, you must notify the person or business you are suing of the court case by having the *Summons* and Complaint or Petition delivered to them. This is called "serving" them.

File your *Summons* and Complaint or Petition with the Circuit Clerk in the county where your court case should be filed. The Circuit Clerk will "issue" the *Summons* by putting a court seal on the form.

Have the sheriff or a private process server serve the *Summons* and a copy of the Complaint or Petition on the Defendant/Respondent. You cannot serve the *Summons* yourself.



Learn more about each step in the process and how to file in the instructions:
ilcourts.info/how-to-summons.

## NEXT STEPS FOR PERSON RECEIVING THIS DOCUMENT:



**You have been sued:**

- ◉ Read all documents attached to this *Summons*.
- ◉ All documents referred to in this *Summons* can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- ◉ You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees (Civil)*.
- ◉ When you go to court, it is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

**If Section 1 on page 1 of this *Summons* is checked (30-day summons*)*:**

- ◉ You **must** file official documents called an *Appearance* and an *Answer/Response* with the court within 30 days of the date you were served with this *Summons*.
- ◉ If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.
- ◉ After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efile. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.
- ◉ You should be notified of any future court dates.

**If Section 2 on page 1 of this *Summons* is checked (date certain summons):**

- ◉ You **must** attend court on the date listed in Section 2 of this *Summons*.
- ◉ If you do not attend that court date, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

**Need Help? ¿Necesita ayuda?**

- ◉ Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents.
- ◉ Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.
- ◉ You can also get free legal information and legal referrals at illinoislegalaid.org.
- ◉ If there are any words or terms that you do not understand, please **visit Illinois Legal Aid Online** at ilao.info/glossary. You may also find more information, resources, and the location of your local legal self-help center at: ilao.info/lshc-directory.

Case Number _____ 2025 L 013115 _____

*FILED DATE: 10/22/2025 11:45 AM  2025L013115*

# PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

**COUNTY:** Cook  ▼
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:**  Kelly Tarrant
*Who started the case.*          *First, Middle, and Last Name, or Business Name*

**DEFENDANTS/RESPONDENTS:**  Chicago Board of Education
*Who the case was filed against.*

_____

_____
*First, Middle, and Last Name, or Business Name*

2025 L 013115
**Case Number**

🛑 **STOP**  Do not complete the rest of the form. **The sheriff or special process server will fill in the form.** Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent who will be served.

My name is _____ and I state:
           *Officer/Process Server First, Middle, Last Name*

## SERVICE INFORMATION

Defendant/Respondent: _____
                      *First, Middle, Last Name, or Business Name*

☐ I was not able to serve the *Summons* and Complaint/Petition on the Defendant/Respondent named above.

**- or -**

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent named above as follows:

☐ **Personally** on the Defendant/Respondent:
   ☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____
   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address, Unit#: _____
   City, State, ZIP: _____

☐ On **someone else at the Defendant/Respondent's home** who is at least 13 years old and is a family member or lives there:
   Name of person served: _____
                          *First, Middle, Last Name*
   ☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____
   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address, Unit#: _____
   City, State, ZIP: _____
   and by sending a copy to this Defendant/Respondent in a postage-paid, sealed envelope to the above
   address on this date: _____.

☐ On the **Business's agent:** _____

*First, Middle, Last Name*

☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

## SERVICE ATTEMPTS

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

**First Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____
Other information about service attempt:

_____

_____

_____

**Second Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____
Other information about service attempt:

_____

_____

_____

**Third Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____
Other information about service attempt:

_____

_____

_____

---

## SIGN

I certify under 735 ILCS 5/1-109 that:

1) everything in this document is true and correct, or I have been informed or I believe it to be true and correct, and

2) I understand that making a false statement on this form is perjury and has penalties provided by law.

Your Signature /s/ _____  Print Your Name _____

You are: ☐ Sheriff in Illinois                    ☐ Special process server
         ☐ Sheriff outside Illinois: _____  ☐ Licensed private detective, license number: _____
                        *County and State*                                                              *License number*

**FEES:**
  Service and Return: $_____  Miles: $_____  Total: $0.00 _____

---

FILED DATE: 10/22/2025 11:45 AM 2025L013115

Law Division Motion Section Initial Case Management Dates for CALENDARS W, X, Y, Z, F, H, R, AJ will be heard in person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 12/22/2025 9:00 AM

FILED
10/21/2025 5:38 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L013115
Calendar, Y
34992230

FILED DATE: 10/21/2025 5:38 PM 2025L013115

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| KELLY TARRANT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. |
| CHICAGO BOARD OF EDUCATION | ) |
| Defendant. | ) JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, KELLY TARRANT (hereinafter referred to as "Plaintiff"), by and through her attorneys, Anthony J. Peraica & Associates, Ltd., and for her complaint against the Defendant, the CHICAGO BOARD OF EDUCATION (hereinafter referred to as "Defendant" or "CPS"), alleges and states as follows:

### NATURE OF CLAIMS

Plaintiff brings this action to remedy unlawful retaliation in violation of the Illinois Whistleblower Act, common law retaliatory discharge, and violation of federal antidiscrimination statutes. Plaintiff seeks lost pay and benefits, compensatory damages, punitive damages and attorney's fees.

### JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction over this matter pursuant to Ill. Const. Article VI, § IX.

2.      This court has personal jurisdiction over the Defendant named herein pursuant to several subsections of 735 ILCS 5/2-209, including but not limited to the transaction of business in this state and the commission of tortious acts within this state.

1

FILED DATE: 10/21/2025 5:38 PM    2025L013115

3.      Venue is proper in this court under 735 ILCS 5/2-101 because it is the county of residence of the Defendant and where the actions out of which this cause of action arose.

## PARTIES

4.      Plaintiff Kelly Tarrant is a Hispanic female over 40 years old, and a resident of Chicago, Illinois.

5.      Defendant CHICAGO BOARD OF EDUCATION is a municipal corporation organized under the laws of the State of Illinois. The Board is responsible for the governance and organizational oversight of Chicago Public Schools (a/k/a City of Chicago School District 299) (hereinafter "CPS"), operates elementary and secondary schools and school systems within the city of Chicago and establishes the policies and standards for the education of children that are followed at CPS Schools and by CPS personnel.

6.      The Board is responsible for the actions and conduct of CPS employees and agents identified herein, and has the right to control the time, manner, method, and performance of same.

7.      Until June 2025, Plaintiff was an employee of Defendant CPS and worked under its authority and control.

8.      At all relevant times, Defendant CPS employed in excess of fifteen employees and was an "employer" within the meaning of Title VII and common law.

## STATEMENT OF FACTS

9.      Plaintiff Kelly Tarrant has served with distinction in the field of investigations and compliance for many years.  She served as the first Deputy Legislative Inspector General overseeing the Chicago City Council. In that role, she investigated public corruption cases that led to prosecutions and earned a reputation for professionalism and integrity.

FILED DATE: 10/21/2025 5:38 PM   2025L013115

10.     Plaintiff began her employment with the Defendant CPS on October 16, 2018 as a team leader in the Law Investigations Unit of the Law Department of CPS.

11.     In May of 2019, Plaintiff was promoted to Manager of Investigations, with commensurate salary increase.

12.     At all times throughout the course of her employment, Plaintiff performed her job to the satisfaction of her employer and beyond.

13.     During Plaintiff's employment with CPS, she managed and otherwise oversaw sensitive and high-profile investigations.  These included matters involving principals, staff, contractors, and vendors where the allegations were significant and often politically sensitive. She was trusted to handle cases that required discretion, collaboration with external agencies, and a commitment to the highest ethical standards.

14.     Plaintiff was regarded by her peers and supervisors as a skilled and hardworking employee.

15.     Plaintiff is of Hispanic heritage.

16.     Plaintiff received excellent reviews and pay increases, up until the racial politics of Chicago intervened to cause a single unfavorable review.

**Lindbloom H.S.  Investigation**

17.     In 2023, Plaintiff was personally tasked by the Chief Executive Officer of Chicago Public Schools, Pedro Martinez, to investigate the Principal of Lindbloom Math & Science Academy, a high school the CPS system located on the South Side of Chicago.

18.     After a diligent, professional and thorough investigation, Plaintiff tendered a report that substantiated charges of mismanagement by the Principal, who was Black.  On or about March 31, 2023, the Principal was removed from Lindbloom under CPS procedures.

FILED DATE: 10/21/2025 5:38 PM    2025L013115

19. In reaction to the charges and report identified above, the Chicago Principals and Administrators Association ("CPAA") and its President, Troy LaRaviere, commenced a retaliatory campaign against Plaintiff and other CPS officials, *inter alia* claiming racism, equating Plaintiff with disgraced Chicago police commander Jon Burge, and planting media accounts of Plaintiff defalcating public money, and criticizing Plaintiff's work in the investigation. The Principal hired as his counsel Benjamin Crump, the attorney who represented the family of George Floyd, who echoed and amplified the false allegations of CPAA and LaRaviere. The claims against Plaintiff by CPAA and others were completely false.

20. Plaintiff requested that CPS issue a denial of the false accusation made against her, but CPS supervisors refused to act. The General Counsel of CPS, Richi Verma, personally directed Plaintiff that Plaintiff was forbidden from tendering or publishing any rebuttal to the false claims of CPAA and LaRaviere. Verma is South Asian and not Hispanic.

21. Verma allowed Plaintiff to be vilified and barred her from responding because she was Hispanic and the allegations were being made by Black principals and LaRaviere, who is Black.

**Plaintiff's Filing with CPS EOCO.**

22. The CPS Equal Opportunity Compliance Office ("EOCO") "handles allegations of adult-to-adult and student-to-adult discrimination, harassment, and retaliation on the basis of Protected Categories such as religion, sex, sexual orientation, disability, as well as sexual harassment and sexual misconduct" per the CPS website.

23. In June 2023, Plaintiff filed a complaint with the EOCO stating claims for intentional discrimination against her in failing to support her against charges of racism made by Black persons against a Hispanic investigator, thereby allowing the charges to stand unrebutted

4

FILED DATE: 10/21/2025 5:38 PM    2025L013115

to the detriment of the reputation of Plaintiff. Plaintiff has repeatedly amended her filing with EOCO to include additional charges of ongoing retaliation against Plaintiff.

24.    Since the filing of Plaintiff's complaint with EOCO, other than meetings where Plaintiff submitted her amendments to her complaint, Plaintiff has received no contact from any EOCO, CPS or outside counsel on the matter, nor has she been advised of any action at all taken on her complaint.

25.    Under EOCO rules, the investigation of Plaintiff's complaint should have been completed within 60 days of filing.  On Plaintiff's information and belief, CPS and EOCO personnel intentionally failed to undertake or complete any investigation based on Plaintiff's complaint for two years.  When Plaintiff filed a Charge of Discrimination with the federal Equal Employment Opportunity Commission she was later informed that her EOCO complaint had been dismissed.

26.    Beginning in 2023 and 2024, Plaintiff experienced marginalization and exclusion by her immediate superiors in retaliation for her EOCO complaint.  The number of personnel assigned to Plaintiff's supervision was substantially reduced to just three, forcing Plaintiff to conduct extensive investigations in over 30 cases nearly on her own, when she previously had many subordinates to assist her.

27.    Prior to 2024, every year end evaluation of Plaintiff found her "proficient", the highest grade.  At the end of 2024, however, Plaintiff received an evaluation of "developing" after she was graded as "needs improvement" on her report on the Lindbloom H.S. Principal and her filing with EOCO.

FILED DATE: 10/21/2025 5:38 PM    2025L013115

**Dunbar H.S. Investigation.**

28.     In 2024, Plaintiff commenced an investigation of senior personnel at Dunbar High School in Chicago on a referral from the Inspector General of CPS.

29.     Plaintiff conducted a diligent, professional and thorough investigation into the senior officials of Dunbar High School land Dunbar High School employees who were members of the relevant Local School Council ("LCS").

30.     Plaintiff's investigation resulted in the removal of Principal Gerald Morrow and his assistant Marva Nichols, both of whom are Black, from positions at Dunbar High School because Plaintiff's investigation revealed the following:

   a.  Morrow had caused an office adjoining the interior pool of the school to be converted into a personal "salon" with sofas and other amenities;

   b.   Morrow was keeping the pool filed and cleaned daily on CPS funds even though there was no swimming program for students, and no students otherwise used the pool;

   c.  Morrow made frequent use of the pool during school hours;

   c.  Morrow had a massage table erected next to the interior pool, at which he received massages;

   d.  Morrow conducted parties in the pool area, after which school staff found liquor bottles and bikini swimsuits in the pool area, which Plaintiff later reported to the CPS Office of the Inspector General;

   e.  Nichols was steering CPS contract to relatives in direct violation of CPS regulations.

31.     Under law, members of LSC must be residents of the school district of that Council.

32.      Plaintiff's investigation revealed that two Dunbar employees serving on the Dunbar LCS, Rickie Jones and Krista Alston, were using a local church within the relevant LSC district as their listed residence and voting address.  Upon checking with the board of Election

Commissioners of the City of Chicago, Plaintiff learned that no less than 17 persons listed the church address as their voting residence.

33.     Upon conducting a supplemental investigation in consultation with the CPS Office of Inspector General, Plaintiff found that the church had no actual residents.

34.     In 2024, Plaintiff filed with her superiors a report of her findings on Morrow, Nichols, Jones and Alston, as well as the church not being a residence.  Plaintiff informed the Chicago Board of Elections of the discrepancy in voting addresses, including a meeting with William Kresse, a Commissioner on the Chicago Board of Election Commissioners.

35.     Soon after filing of the report by Plaintiff, CPAA and LaRaviere engaged in further false personal attacks on Plaintiff in reaction to the report, describing her are "racist." The attacks of CPAA and LaRaviere were false.

36.     Upon the filing of reports on Dunbar by Plaintiff, she was called by Gabriela Brizuela, a Deputy General Counsel in the CPS Law Department, who reminded Plaintiff that the CPS School Law Unit, a unit of the CPS Law Department, had authority over discipline of LSC members.  This concept was previously unheard of by Plaintiff in her years of CPS investigations, as while the School Law Unit had administrative control of LSCs it did not conduct investigations.

37.     Brizuela demanded that the report be changed as to Rickie Jones because the "LSC Director" could attest that Rickie Jones lived at the church.  Being sure of the facts found in her investigation of Jones and the church, Plaintiff refused to amend her report as requested.

38.     After the filing of her report, Plaintiff was called to the office of CPS General Counsel Richi Verma, where Verma reprimanded Plaintiff over her Dunbar report, stating that CEO Pedro Martinez was personally disappointed in Plaintiff.

FILED DATE: 10/21/2025 5:38 PM    2025L013115

FILED DATE: 10/21/2025 5:38 PM    2025L013115

39.    Plaintiff waws reprimanded because she was Hispanic and filed an adverse investigation report upon Black employees.

40.    After filing her report, Plaintiff was asked to attend an online meeting with General Counsel Verma.  In the teleconference, Verma related a report by CPS CEO Pedro Martinez that Cook County Board President Preckwinkle called the office to demand leniency for Jones and Alston, who were on the telephone line with President Preckwinkle.

41.    Plaintiff immediately stated to Verma that President Preckwinkle's conversation was improper and needed to be reported to CPS Office of Inspector General.  Plaintiff has since been told by Inspector General personnel that no such report was made by Verma.

42.    Later, Plaintiff was called into the officer of her immediate superior at the Law Department, Elizabeth Barton. Barton asked Plaintiff to change her report on Dunbar.  Plaintiff refused.  Barton then assumed control of the report on Dunbar and removed many evidentiary aspects of the report in an attempt to hide misconduct at Dunbar.

43.    On Plaintiff's information, Alston remains on the Dunbar LSC.

**Further Interference by CPAA in CPS Discipline.**

44.    In 2024 and early 2025, the allegation by CPAA and LaRaviere had caused CPS to change policy to bar removal of Principals for misconduct, such as:

a.    A CPS teacher was taking a team to Canada for a tournament, but one girl on the team was unable to cross the border.  The teacher placed her with strangers in a house until the team returned;

b.    One Principal had $10,000 in funds that he could not account for;

c    A school clerk was impermissibly drawing three salaries;

d.    a school employee obtained control of a locked classroom which was used to sell goods donated to a fraudulent charity for the needy, which continued even after the charity's legal status was revoked and the charity was placed under investigation by the Illinois Attorney General.

8

2025L013115

Case: 1:25-cv-14692 Document #: 1-1 Filed: 12/03/25 Page 17 of 39 PageID #:21

When Plaintiff sought to remove from schools certain persons referred to in the above subparagraphs, in accord with longstanding CPS policy, Managing Deputy Counsel Libby Massey called Plaintiff and informed her that CPS was immediately changing its policy from removal to "remediation" and that Plaintiff was forbidden from removing the guilty CPS employees from the relevant schools, despite evidence of misconduct.

45.     From 2024, into 2025, Plaintiff faced increasing pressure from her superiors to act in ways that were inconsistent with her duties and professional ethics. She was repeatedly urged to alter or delay investigations or to avoid opening cases altogether.

**Interference from Senior CPS Officials.**

46.     In late 2023, an incident occurred at Marshall High School in which a student required emergency medical attention.

47.     Plaintiff conducted a thorough and professional investigation and found allegations of negligence by CPS personnel to be unfounded based on witness interviews and video evidence. Plaintiff tendered her report and a letter stating the outcome was sent to the parents on April 30, 2024.

48.     In May 2025, Plaintiff was contacted about the case by William Klee, Deputy Chief of High Schools at CPS. Klee stated that the parents: (1) were not satisfied with the report, (2) an inadequate investigation occurred; and (3) contended that key witnesses had not been interviewed and no outcome had been stated to the parents. The parents' allegations were incorrect.

49.     Plaintiff met with Klee in May 2025. Klee stated that "his boss," which given Klee's high position could only have been the CEO, the Chief Education Officer or a member of the Board of Education, had "gotten a call" and wanted to know who the witnesses were, and

FILED DATE: 10/21/2025 5:38 PM   2025L013115

what proof existed that Plaintiff conducted the interviews claimed.  Plaintiff responded that witness identities in interviews were confidential, but the witness interview notes were logged with the date and time. Without disclosing details, Plaintiff informed Klee that three independent interviews of CPS personnel contained similar accounts of the incident, with no evidence of negligence by CPS personnel. She informed Klee that the investigation included review of the disciplinary histories of those involved and even investigation into the ambulance response and medical treatment. Finally, she related that a letter to the parents was in the file with a date of April 30, 2024.

50.     In response, Klee demanded a "do over" of not only the case of the Marshall student, but two other negligence investigations. Plaintiff responded that a "do over" of a completed investigation was extremely rare, and never done without new evidence, none being asserted by Klee.

51.     Plaintiff reported her meeting to both her direct supervisor, Elisabeth Barton, but also CPS General Counsel Ruchi Verma. Barton later contacted Plaintiff and requested that she read the contents of the confidential investigation file to Klee, thereby evading the confidentiality requirements of investigations. Plaintiff refused to conduct the improper procedure. Barton responded that she would contact Klee and "possibly" read him portions of the report.

52.     The interaction with Klee was not the first time that senior CPS officials had sought confidential information on investigations, as the Board had recently demanded weekly updates of another major case, starting in June 2025. While discussing the Klee interview Plaintiff expressed her unease over the improper action of Board members and a Chief making demands that investigations be redone, or demanding the contents of confidential investigation

FILED DATE: 10/21/2025 5:38 PM    2025L013115

files, all creating the possibility that confidential information and witness identities could be leaked to the public.

**Steinmetz High School Investigation.**

53.    Sometime before or in June 2025, a teacher at Steinmetz H.S. made a complaint that the Community Representative on the relevant LSC, one Vanessa Valentin. The complaint was that Valentin was not a resident of the district as required to serve on the LSC under law.

54.    In late May or early June 2025, the Valentin matter was referred to Plaintiff by the LSC Relations with a request for an investigation.

55.    Upon initial investigation, Plaintiff quickly found an address for Valentin that was well outside of the Steinmetz district.

56.    Junior level colleagues in the CPS e Law Department were aware that Plaintiff was revieing Valentin.  Plaintiff was informed by a CPS Law Department employee who responded to freedom of information requests that several public requests had been filed that mentioned Valentin and sought records of payments by CPS to a company that was servicing Steinmetz High School.

57.    The new information caused Plaintiff to delve into Law Department records on Valentin, where Plaintiff discovered allegations by Steinmetz teachers from 2018 that Valentin he was accused of using a school locker for selling merchandise such as school uniforms to Steinmetz students for cash, a serious violation of CPS rules.

58.    Plaintiff contacted the teachers who made the allegations and learned of their allegations from freedom of information requests that the printing company was owned by Valentin and her father and had contracts with no less than three other CPS schools besides Steinmetz.

FILED DATE: 10/21/2025 5:38 PM   2025L013115

59.     Plaintiff obtained the spreadsheets mentioned by her colleague and found that the contracts with the company of Valentin and her father resulted in payments by CPS of a sizeable amount of money, potentially as much as $1 million dollars or more, paid over years starting not later than 2018.

60.     Plaintiff probed further and found that Valentin's father was a CPS employee in the Steinmetz district and was serving on an LSC, Valentin's husband is employed by CPS as a security officer, and as was Valentin's brother.

61.     Plaintiff's probe revealed that Valentin was a City of Chicago employee, being the Chief of Staff to Alderman Gilberto Villegas of the 36th Ward.

62.     Plaintiff concluded that the various contracts, payments, employment and sales involving Valentin and her family were serious and in some cases possibly criminal violations of law and CPS policy.  Plaintiff informed the Office of the Inspector General of the matter as possible procurement fraud.

63.     Plaintiff informed her superior, Barton, that she was undertaking the investigation of Valentin and informed her of the several serious violations that were indicated from just an initial review.

64.     In the structure of the CPS Law Department in June 2025, under General Counsel Richi Varma were two Deputy General Counsel Elisabeth Barton, who was Plaintiff's direct superior, and Deputy General Counsel Libby Massey, who exercised supervision over a number of areas of the Law Department, including the unit that responded to freedom of information requests.

65.     Because Law Department employees in the unit that responds to Freedom of Information Act requests reported their activity to Deputy Counsel Massey on a daily basis, and

FILED DATE: 10/21/2025 5:38 PM    2025L013115

the employee from whom Plaintiff obtained the spreadsheets on expenditures to Valentin's family firm were detailed worked in that unit, on Plaintiffs alleges on information and belief that in June 2025,Deputy General Counsel Libby Massey well aware of Plaintiff's information from the spreadsheets and her proposed investigation into allegations that Valentin had steered CPS contracts to a family firm.

66.     In June 2025, Plaintiff directly reported to her superior, Deputy General Counsel Elisabeth Barton Plaintiff's findings on Valentin's residency and her lack of qualification to serve on the Steinmetz LSC; Plaintiff's knowledge of the allegations against Valentin's sales at Steinmetz, her contracts with CPS a firm owned by CPS employees, Plaintiff's knowledge of the spreadsheets that showed large payments to Valentin's family firm; and Plaintiff's intention to open an investigation of Valentin in the Law Investigations Unit.

67.     Because Barton and Massey conducted daily meetings with CPS General Counsel Richi Verma to review the status of matters under their supervision, Plaintiff alleges on information and belief that in June 2025 General Counsel Varma was aware of Plaintiff's above-stated revelations about Valentin.

68.     On or about June 9, 2025, Plaintiff attended a meeting of General Counsel Verma and a number of Deputy General Counsel, including Barton, at which cases within the Law Department were reviewed. At the meeting, Plaintiff stated that she was opening an investigation into Steinmetz High School LSC member.  Those present at the meeting knew that Plaintiff was referring to Valentin. Many present at the meeting knew of Valentin's relationship with Alderman Villegas.

13

FILED DATE: 10/21/2025 5:38 PM    2025L013115

69. At approximately 5:00 pm on June 12, 2025, Plaintiff notified Valentin by email of the investigation and instructed her to make an appointment for an in-person interview at the Law Department office.

70. Over the course of the weekend, Valentin left a series of voicemails on Plaintiff's office phone. Plaintiff listened to the several messages and found them to be erratic and frantic, with Valentin constantly asking Plaintiff to call her back.

71. On Monday, June 16, 2025, Plaintiff was off for the day. Plaintiff asked her remaining investigator to contact Valentin to inform her that Plaintiff would be setting up an investigatory interview with Valentin for later in the week.

72. In the evening of Monday June 16, Plaintiff again investigated online the residency of Valentin and confirmed that Valentin lived on Taylor Street in Chicago, in the LSC district of Manley High School, not Steinmetz High School.

**Suspension and Termination of Plaintiff's Employment.**

73. In May 2025, Plaintiff received a favorable mid-year performance review. Plaintiff was informed by her superior, Deputy General Counsel Elizabeth Barton, and Deputy General Counsel Libby Massey that she received high evaluation scores, from her team members, reflecting the consistent quality work.

74. By mid-June 2025, A pattern had developed in which Plaintiff had repeatedly refused to breach or "bend' regulations, or avoid investigations that were called for, all upon improper pressure and from her superiors and those senior to her superiors, while upholding her the integrity of her investigations, the integrity of the CPS internal investigation process, and her own personal integrity.

14

FILED DATE: 10/21/2025 5:38 PM    2025L013115

75.     Prior to and as of June 16, 2025, Plaintiff's supervisors at CPS, including Barton

and Verma, knew that Plaintiff was conducting three politically sensitive investigations,

including the complaint against Valentin at Steinmetz High School.  Plaintiff's superiors knew

that Plaintiff had already the existence of serious misconduct by Valentin.  Plaintiff's superiors

knew that Plaintiff was to conduct a misconduct interview in one case on June 17, and another on

June 18, with Valentin' interview to be scheduled.

76.     Prior to and as of June 16, 2025, Plaintiff's supervisors at CPS, including Barton

and Verma, had knowledge of Plaintiff's earlier refusals to amend investigation reports based on

political pressure.   Plaintiff's superiors knew that she would act with integrity and not alter or

amend the results based on the facts found in her investigations.

77.     On Plaintiffs information and belief, politically prominent persons outside of CPS

had imposed pressure upon Plaintiff's direct superiors to block Plaintiff from exposing what she

had already found in her investigations, and other misconduct she was likely to find.

78.     When Plaintiff began work on Tuesday, June 17, 2025, Plaintiff was immediately

called into a teleconference with her superior, Elizabeth Barton, who is White.  The meeting was

attended by a representative of the Human Resources department of CPS.  In the meeting,

Plaintiff was informed that she was being suspended from her position immediately upon a claim

of discrimination by a fellow employee, who was not identified, and "other serious misconduct."

Plaintiff was placed on indefinite suspension with no further details stated.  Plaintiff was placed

on unpaid leave.

79.     In the meeting, Barton stated to Plaintiff that a complaint against her had been

filed with EOCO, and was being referred to the Taft law firm in Chicago.  The Taft firm

performs a substantial amount of legal work for CPS each year. Barton's statement caused

FILED DATE: 10/21/2025 5:38 PM    2025L013115

concern in Plaintiff, first because Barton knew of the filing at all, and second because under normal procedures EOCO conducts any referral to outside counsel for investigation of a claim, not the respondent's superior.  Third, Plaintiff had heard in the office that Barton had a close relationship with at least one employment law partner at Taft, as Barton assigned outside counsel work.

80.     In the meeting, Plaintiff was tendered a prepared severance agreement for her to sign concerning her employment with CPS.  Plaintiff was given until June 20, 2025 to accept the agreement to receive the separation benefits offered.

81.     On June 17, 2025, Plaintiff was barred from entering the CPS Law Department.

82.     Plaintiff was directed to tender her CPS laptop and cell phone.  Plaintiff feared that the digital contents of the equipment would be destroyed, and so tendered the equipment to the CPS Office of Inspector General for preservation.

83.     Plaintiff did not sign the CPS severance agreement by June 20, 2025 as requested in the June 17, 2025 meeting.

84.     As of June 20, 2025, Plaintiff was suspended from regular CPS payroll.

85.     On or about June 20, 2025, Plaintiff's CPS health insurance was terminated. Plaintiff is the head of a household with a child with significant health issues and a terminally ill mother.  The sudden loss of coverage put Plaintiff's family in immediate medical and financial danger.

86.     From and after the meeting on June 17, 2025, Plaintiff received no additional communication from CPS on her employment status.

87.     After four weeks without communication from CPS on her status, on July 18, with her payroll and benefits terminated, her being barred from the office and having been

16

FILED DATE: 10/21/2025 5:38 PM   2025L013115

handed a severance agreement while being escorted out of the office, on July 18, 2025 Plaintiff acknowledged the obvious: she had been terminated from employment with CPS.

88. On Plaintiff' in formation and belief, none of the investigation interviews she had schedule for June 17 and 18 ever occurred. Further, Valentin's interview has never occurred.

89. At least one of the three politically sensitive matters Plaintiff was investigating on June 17, 2025 was closed by CPS without further investigation. On Plaintiff's information and belief, the other two have been similarly closed without further investigation or a report. On Plaintiff's information and belief based on news reports, parents protested the closing of at lease one of the investigations.

**False Charges and Investigation of Plaintiff**

90. The charges against Plaintiff identified in the meeting of June 17, 2025 were false, and created only to supply a superficially plausible basis for the suspension and termination of Plaintiff.

91. On or about July 25, 2025, an attorney from the Taft law firm contacted Plaintiff's counsel. In the email, Plaintiff was informed for the first time that she was accused of "potential discrimination, harassment and retaliation." The attorney requested an interview with Plaintiff despite the fact that Plaintiff had been terminated by CPS, as Plaintiff had acknowledged days earlier by email on July 18.

92. The Taft attorney refused to inform Plaintiff of the nature of the allegations against her prior to a transcribed interview. Plaintiff concluded that the investigation was a sham contrivance with a preordained result of a finding misconduct by Plaintiff, to be used in defense of any future claims by Plaintiff. Accordingly, in an email on August 7, 2025, Plaintiff's counsel informed the Taft attorney that Plaintiff declined to be interviewed.

17

FILED DATE: 10/21/2025 5:38 PM   2025L013115

93.     Two weeks later, on August 22, 2025, the Taft attorney called Plaintiff's counsel and stated that CPS still wanted an interview with Plaintiff and was willing to tender additional information on the claim against Plaintiff in order to obtain it.   The new information was minor, however, which only reinforced Plaintiff's belief that the interview was desired solely so that a finding could be made against Plaintiff in an investigation in which she had participated, so to bolster the credibility of the preordained result.

94.     In a letter on August 22, 2025, Plaintiff's counsel asserted Plaintiff's complete lack of confidence in the integrity of the investigation and stated Plaintiff's decision not to participate.

95.     Just prior to this filing, Plaintiff learned that the "complaint" filed against her was made by a single subordinate with close personal ties to personnel in CPS Human Resources. Further, it was filed just days before Plaintiff's suspension, at a time when Plaintiff's superiors were aware of Plaintiff's three politically sensitive investigations, and her knowledge of allegations of substantial misconduct by Valentin.

96.     The complaint made against Plaintiff had no legal or factual basis.

97.     The claimed complaint and investigation were concocted by CPS officials as additional retaliation against Plaintiff, and to create superficial claims against Plaintiff to use in any future court proceeding.

**Failure to Pay Plaintiff Compensation Due or Tender Employment File.**

98.     Defendant has intentionally failed to pay Plaintiff the full compensation due for period prior to the termination, despite demands from Plaintiff.

FILED DATE: 10/21/2025 5:38 PM   2025L013115

99.     On July 24, 2025, Plaintiff requested her employment file from Defendant.  To date she has only received part of her employment file.  All of Plaintiff s employee evaluations were removed from the portion of the file given to her.

### COUNT I
(Illinois Whistleblower Act)

100.     Plaintiff re-alleges Paragraphs 1 through 98 this Complaint as if more fully stated herein.

101.     Defendant was Plaintiff's "employer" as defined by the Illinois Whistleblower Act, 740 ILCS 174/1, et seq.("IWA")

102.     Plaintiff was an "employee" as defined in the IWA.

103.     Defendant is a governmental authority as defined in the IWA.

104.     Section 15(a) of the IWA provides: " An employer may not take retaliatory action against an employee who discloses or threatens to disclose to a public body conducting an investigation, or in a court, an administrative hearing, or any other proceeding initiated by a public body, information related to an activity, policy, or practice of the employer, where the employee has a good faith belief that the activity, policy, or practice (i) violates a State or federal law, rule, or regulation or (ii) poses a substantial and specific danger to employees, public health, or safety."

105.     Section 15(b) of the IWA provides: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

106.     Section 20 of the IWA provides: "Retaliation for certain refusals prohibited. An employer may not take retaliatory action against an employee for refusing to participate in an

FILED DATE: 10/21/2025 5:38 PM   2025L013115

activity that the employee has a good faith belief that such participation would result in a violation of a State or federal law, rule, or regulation . . . "

107.    Defendant violated Section 15(a) of the IWA by taking an adverse employment action against Plaintiff that was in retaliation for Plaintiff's disclosure to a government or law enforcement agency conducting an investigation of actions by CPS employees that Plaintiff had reasonable cause to believe violated State and federal law, rules, or regulations.

108.    Defendant violated Section 15(b) of the IWA by taking an adverse employment action against Plaintiff that was in retaliation for Plaintiff's disclosure to a government agency of actions by CPS employees that Plaintiff had reasonable cause to believe violated State law, rules, or regulations.

109.    Defendant violated Section 20 of the IWA by taking an adverse employment action against Plaintiff that was in retaliation for Plaintiff's refusing to participate in an activity that Plaintiff had a good faith belief would result in a violation of a State law, rule, or regulation. As more fully described above, Defendant retaliated against Plaintiff for her disclosures of wrongdoing by CPS employees, which Plaintiff had reasonable cause to believe violated State and federal law, rules, or regulations.

110.    As a result of Defendant's retaliation, Plaintiff has suffered damages as Defendant took adverse employment action against Plaintiff which seriously affected her physical, financial, and psychological well-being, and caused her to suffer significant damages.

WHEREFORE, Plaintiff, KELLY TARRANT, asks that judgment be entered against Defendant as follows:

A.    Ordering the Defendant to pay to Plaintiff damages for loss of wages, past and

FILED DATE: 10/21/2025 5:38 PM    2025L013115

future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant' wrongful acts, along with interest;

B.     Ordering the Defendant to pay to Plaintiff the compensatory damages incurred as a result of its wrongful acts including but not limited to damages for emotional distress;

C.     Ordering the Defendant to pay to Plaintiff the attorneys' fees, court costs, and disbursements which Plaintiff has incurred and will incur as a result of Defendant' wrongful and willful conduct; and

D.     Awarding to Plaintiff such other relief as this Court deems proper.

### COUNT II
(Common Law Retaliatory Discharge)

111.     Plaintiff re-alleges Paragraphs 1 through 98 this Complaint as if more fully stated herein.

112.     Defendant discharged Plaintiff from employment;

113.     Plaintiff's discharge from employment was in retaliation for Plaintiff's activities in reporting misconduct by CPS employees.

114.     The discharge violates a clearly mandated public policy because Plaintiff was reporting illegal or improper conduct by government employees.

WHEREFORE, Plaintiff, KELLY TARRANT, asks that judgment be entered against Defendant as follows:

A.     Ordering the Defendant to pay to Plaintiff damages for loss of wages, past and

future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant' wrongful acts, along with interest;

B.      Ordering the Defendant to pay to Plaintiff the compensatory damages incurred as a result of its wrongful acts including but not limited to damages for emotional distress;

C.      Ordering the Defendant to pay to Plaintiff the attorneys' fees, court costs, and disbursements which Plaintiff has incurred and will incur as a result of Defendant' wrongful and willful conduct; and

D.      Awarding to Plaintiff such other relief as this Court deems proper.

## COUNT III
### (Title VII Discrimination Based Upon Race)

115.    Plaintiff re-alleges Paragraphs 1 through 98 this Complaint as if more fully stated herein.

116.    Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII.  Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 24, 2025 Plaintiff was issued a Determination and Notice of Rights from the EEOC.  The Charge of Discrimination and Right to Sue letter are attached hereto and made part hereof as Exhibits A and B, respectively.

117.    At all times throughout the course of employment, Plaintiff was qualified for her position and performed her job to the legitimate expectations of her employer and beyond.

118.    Non-Hispanic employees were treated more favorably than Plaintiff in that they were not subject to harassment, a hostile work environment, different terms and conditions of employment, or constructively discharged.

22

119.     The harassment, a hostile work environment, different terms and conditions of employment, and constructive discharge of Plaintiff constituted and was the result of discrimination based upon race by the Defendant, in violation of Title VII.

120.     Plaintiff was subjected to harassment, a hostile work environment, different terms and conditions of employment, and constructively discharged by Defendant because of Plaintiff's race, and any proffered reason to the contrary by Defendant is pretext for unlawful discrimination.

121.     Any reason given for Defendant' adverse actions are a pretext for discrimination based on race, in that Plaintiff would not have been subjected to harassment, a hostile work environment, different terms and conditions of employment, and constructive discharge but for Defendant' motive to discriminate against Plaintiff due to her race.

122.     By the above-described actions, but not limited to the same, Defendant discriminated against Plaintiff based upon her race, in violation of Title VII, and treated non-Romanian employees more favorably.

123.     By the above-described actions, but not limited to the same, Defendant took adverse employment action against Plaintiff which seriously affected her physical, financial, and psychological well-being, and caused her to suffer significant damages.

124.     As a direct and proximate result of the Defendant' actions, Plaintiff suffered severe financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, medical expenses, other compensatory damages, attorneys' fees, court costs, and other damages allowable under Title VII.

FILED DATE: 10/21/2025 5:38 PM    2025L013115

FILED DATE: 10/21/2025 5:38 PM    2025L013115

125.     Defendant's wrongful acts, individually and/or by and through its agents, were intentional, willful and wanton, and in total disregard and reckless indifference to Plaintiff's rights under Title VII.

126.     The Defendant' actions were willful, wanton, malicious and oppressive and justify the awarding of exemplary, liquidated and/or punitive damages.

127.     Plaintiff is entitled to the recovery of compensatory damages.

128.     An award of punitive damages is appropriate and necessary to deter Defendant from committing similar acts of discrimination in the future.

WHEREFORE, Plaintiff, KELLY TARRANT, asks that judgment be entered against Defendant as follows:

A.     Ordering the Defendant to pay to Plaintiff damages for loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant' wrongful acts, along with interest;

B.     Ordering the Defendant to pay to Plaintiff the compensatory damages incurred as a result of its wrongful acts;

C.     Ordering the Defendant to pay to Plaintiff the attorneys' fees, court costs, and disbursements which Plaintiff has incurred and will incur as a result of Defendant' wrongful and willful conduct; and

D.     Awarding to Plaintiff such other relief as this Court deems proper.

### COUNT IV
(Retaliation in Violation of Title VII)

129.     Plaintiff re-alleges Paragraphs 1 through 98 this Complaint as if more fully stated herein.

24

130.     Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII.  Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 24, 2025 Plaintiff was issued a Determination and Notice of Rights from the EEOC.  The Charge of Discrimination and Right to Sue letter are attached hereto and made part hereof as Exhibits A and B, respectively.

131.     At all times throughout the course of employment, Plaintiff was qualified for her position and performed her job to the legitimate expectations of her employer and beyond.

132.     Plaintiff exercised, or attempted to exercise, her rights under Title VII by reporting harassment based on national origin age and/or sex described above to Defendant' security, human resources, and EOCO offices.

133.     Upon information and belief, Defendant took no action to address the concerns raised in Plaintiff's report and allowed her to continue to be subjected to harassment, a hostile work environment, and different terms and conditions of employment until Plaintiff was constructively discharged on.

134.     Defendant' inaction and constructive discharge of Plaintiff was in retaliation for Plaintiff's exercise of, or attempt to exercise, her rights under the Title VII, and namely reporting harassment and a hostile work environment based on national origin and/or sex.

135.     Defendant's inaction and constructive discharge of Plaintiff was because of Plaintiff's exercise of, or attempt to exercise, her rights under Title VII, and any proffered reason to the contrary by Defendant is pretext for unlawful retaliation.

136.     Plaintiff's exercise of, or attempt to exercise, her rights under Title VII was a motivating factor in Defendant' inaction and constructive discharge of Plaintiff.

FILED DATE: 10/21/2025 5:38 PM   2025L013115

FILED DATE: 10/21/2025 5:38 PM    2025L013115

137. Defendant' inaction and constructive discharge of Plaintiff would not have occurred but for Defendant' motive to retaliate against Plaintiff due to her exercise of, or attempt to exercise, her rights under Title VII.

138. By the above-described actions, but not limited to the same, Defendant retaliated against Plaintiff based upon her exercise of, or attempt to exercise, her rights under Title VII, in violation thereof, and treated employees who did not exercise or attempt to exercise rights under Title VII more favorably.

139. By the above-described actions, but not limited to the same, Defendant took adverse employment action against Plaintiff which seriously affected her physical, financial, and psychological well-being, and caused her to suffer significant damages.

140. Defendant's wrongful acts, individually and/or by and through its agents, were intentional, willful and wanton, and in total disregard and reckless indifference to Plaintiff's rights under Title VII.

141. As a direct and proximate result of the Defendant' actions, Plaintiff suffered severe financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, medical expenses, other compensatory damages, attorneys' fees, court costs, and other damages allowable under Title VII.

142. Defendants' actions were willful, wanton, malicious and oppressive and justify the awarding of exemplary, liquidated and/or punitive damages.

143. Plaintiff is entitled to the recovery of compensatory damages.

144. An award of punitive damages is appropriate and necessary to deter Defendant from committing similar acts of retaliation in the future.

FILED DATE: 10/21/2025 5:38 PM    2025L013115

WHEREFORE, Plaintiff, KELLY TARRANT, asks that judgment be entered against Defendant as follows:

A.      Ordering the Defendant to pay Plaintiff damages for loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant' wrongful acts, along with interest.

B.      Ordering the Defendant to pay Plaintiff the compensatory damages incurred as a result of its wrongful acts.

C.      Ordering the Defendant to pay Plaintiff the attorneys' fees, court costs, and disbursements which Plaintiff has incurred and will incur as a result of Defendant' wrongful and willful conduct; and

D.      Awarding to Plaintiff such other relief as this Court deems proper.

## COUNT V
(Age Discrimination)

145.    Plaintiff re-alleges Paragraphs 1 through 98 this Complaint as if more fully stated herein.

146.    Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII.  Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 24, 2025, Plaintiff was issued a Determination and Notice of Rights from the EEOC.  The Charge of Discrimination and Right to Sue letter are attached hereto and made part hereof as Exhibits A and B, respectively.

147.    At all times relevant to this Complaint, the Age Discrimination in Employment Act of 1967,  29 U.S.C. § 621et seq., and the Illinois Human Rights Act, 775 ILCS 5/1, et seq.,

27

FILED DATE: 10/21/2025 5:38 PM    2025L013115

prohibited employer acts that intentionally discriminate against older workers or had a disparate impact on older workers.

148.    At all times relevant to this Complaint Plaintiff was over 40 years of age.

149.    Despite the fact that Plaintiff had a history of high performance ratings, Plaintiff's employment was terminated.

150.    Other younger employees whose performance was similar to Plaintiff's performance were not terminated.

151.    The Defendant' actions were motivated by Plaintiff's older age.

152.    Defendant's acts were willful and taken with specific intent to harm Plaintiff.

. WHEREFORE, Plaintiff, KELLY TARRANT, asks that judgment be entered against Defendant as follows:

A.    Ordering the Defendant to pay Plaintiff damages for loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant' wrongful acts, along with interest.

B.    Ordering the Defendant to pay Plaintiff the compensatory damages incurred as a result of its wrongful acts.

C.    Ordering the Defendant to pay Plaintiff the attorneys' fees, court costs, and disbursements which Plaintiff has incurred and will incur as a result of Defendant' wrongful and willful conduct; and

D.    Awarding to Plaintiff such other relief as this Court deems proper.

FILED DATE: 10/21/2025 5:38 PM    2025L013115

KELLY TARRANT


By:   /s/ *Anthony J. Peraica*
                One of her attorneys


Anthony J. Peraica & Associates Ltd.
Attorneys for Plaintiff
5130 S. Archer Avenue
Chicago, Illinois 60632
(773) 735-1700
support@peraica.com

29



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2025L013115   **SHERIFF NUMBER:** 20228640   **MULT. SER.:** 1   **DOC. TYPE:** LAW

**DIE DATE:** 11/21/2025   **RECEIVED DATE:** 10/27/2025   **FILED DATE:** 10/22/2025   **DIST:** 602

| | |
|---|---|
| **DEFENDANT:** CHICAGO BOARD OF EDUCATION | **PLAINTIFF:** TARRANT, KELLY |
| **ADDRESS:** 42 W MADISON ST | **ATTORNEY:** ANTHONY J PERAICA AND ASSOCIATES LTD |
| **CITY:** CHICAGO | **ADDRESS:** 5130 S ARCHER AVE |
| **STATE:** IL   **ZIP CODE:** 60602 | **CITY:** CHICAGO |
| **ATTACHED FEE AMT:** | **STATE:** IL   **ZIP CODE:** 60632 |
| **SERVICE INFORMATION:**   R/A: SEAN B HARDEN PRES, CHGO BD OF EDUCATION | |

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

☐ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

☐ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE  DAY OF _  20.

☐ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

☑ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION ____COMPANY____BUSINESS _____ PARTNERSHIP ___

☐ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

☐ **(6) S.O.S/D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

☐ **(7) CERTIFIED MAIL**

**** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT ****

**(8)** AND BY MAILING ON THE ___ DAY OF _____ 20 _____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATON SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

| | | |
|---|---|---|
| ☐ (01) NO CONTACT | ☐ (05) WRONG ADDRESS | ☐ (09) DECEASED |
| ☐ (02) MOVED | ☐ (06) NO SUCH ADDRESS | ☐ (10) NO REGISTED AGENT |
| ☐ (03) EMPTY LOT | ☐ (07) EMPLOYER REFUSAL | ☐ (11) OUT OF COOK COUNTY |
| ☐ (04) NOT LISTED | ☐ (08) CANCELLED BY PLAINTIFF ATTY | ☐ (12) OTHER REASON (EXPLAIN) |

**EXPLANATION:**

| | |
|---|---|
| **WRIT SERVED ON:** TREVOR FITPATRICK | **ATTEMPTED SERVICES** |
| **SEX:** M   **RACE:** BL   **AGE:** 50 | Date        Time        Star # |
| **THIS** 05 **DAY OF** November   **20** 25 | |
| **TIME:** 9:56 AM | |

THOMAS J. DART,
SHERIFF, BY: /S/   JONES, ANTHONY #11464                , DEPUTY



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2025L013115    **SHERIFF NUMBER:** 20228640    **MULT. SER.:** 1    **DOC. TYPE:** LAW

**DIE DATE:** 11/21/2025    **RECEIVED DATE:** 10/27/2025    **FILED DATE:** 10/22/2025    **DIST:** 602

| Date | Time | Star # |
|------|------|--------|