**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KELLY TARRANT, )
)
Plaintiff, )
)  Case No. 2025-cv-14692
v. )
)  Judge Sharon Johnson Coleman
CHICAGO BOARD OF EDUCATION, )
)
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Kelly Tarrant, accuses Defendant, Chicago Board of Education, her former employer, of retaliating against her for reporting misconduct by Chicago Public School employees. Before the Court is Defendant's motion to dismiss Ms. Tarrant's claim of Common-Law Retaliatory Discharge (Count II). For the following reasons, the Court grants Defendant's motion dismisses Count II [21].

**BACKGROUND**

Unless otherwise indicated, the following facts are drawn from Ms. Tarrant's second amended complaint, dkt. 17 (hereinafter "SAC"), and are presumed true for the purpose of resolving the instant motion.

Chicago Public Schools ("CPS") operates elementary and secondary school systems within Chicago, Illinois, establishes the policies and standards for both students and personnel at the schools, and is governed by the Defendant, Chicago Board of Education ("BOE"). SAC ¶ 5. The Plaintiff, Kelly Tarrant ("Ms. Tarrant") worked as a Deputy Legislative Inspector General for CPS, investigating public corruption matters involving principals, staff, contractors, and vendors from October 2018

1

until June 2025. *Id.* at ¶¶ 7, 9, 13. Up until the complained of events, Ms. Tarrant performed her job to CPS' satisfaction. *Id.* at ¶¶ 10, 12.

### A. Lindbloom Investigation

In 2023, Ms. Tarrant investigated Lindbloom Math & Science Academy ("Lindbloom"), a high school within the CPS system. *Id.* at ¶ 17. After her investigation, Ms. Tarrant submitted a report that highlighted mismanagement by the Lindbloom's Principal which culminated in their dismissal. *Id.* at ¶ 18. In response to this removal, the Chicago Principals and Administrators Association ("CPAA") claimed publicly, via social media, that Ms. Tarrant and other CPS officials were acting in a racially discriminatory manner by disproportionally reprimanding Black principals. *Id.* at ¶¶ 18–19. The CPAA equated Ms. Tarrant to "disgraced Chicago police commander Jon Burge," and accused Ms. Tarrant misusing public funds. *Id.* at ¶ 19.

Ms. Tarrant, who is Hispanic, requested that CPS issue a denial of these allegations made by CPAA, but there was no action taken by CPS, nor was Ms. Tarrant allowed to rebut these claims herself. *Id.* at ¶ 20. Additionally, after being denied the opportunity to respond to the claims, Ms. Tarrant filed a complaint of intentional discrimination with the CPS Equal Opportunity Compliance Office ("EOCO"). *Id.* at ¶ 23. Ms. Tarrant received no update from the EOCO within the 60-day response deadline regarding any action taken in response to her complaint. *Id.* at ¶ 25.

Following the investigation of Lindbloom, Ms. Tarrant alleges she began facing "marginalization and exclusion by her immediate superiors in retaliation for her EOCO complaint" consisting of a reduction in personnel assigned to her supervision and a drop in her rating for her year-end evaluations. *Id.* at ¶¶ 26–27.

### B. Dunbar Investigation

In 2024, Ms. Tarrant was assigned to another investigation, this time at Dunbar High School ("Dunbar"), which resulted in the removal of Dunbar's principal and his assistant. *Id.* at ¶¶ 28–30.

During this investigation, Ms. Tarrant learned of discrepancies in residences of Local School Council ("LSC") members and filed a report with the Chicago Board of Elections. *Id.* at ¶¶ 30–34. After Ms. Tarrant filed the reports, the CPAA continued to claim Ms. Tarrant was "racist." *Id.* at ¶ 35. Shortly after filing the report, the CPS Law Department asked Ms. Tarrant to amend her report to adjust the address of one of the LSC members. *Id.* at ¶ 37. When she refused to do so, the CPS General Counsel reprimanded her for her refusal. *Id.* at ¶ 38. Around that time, Ms. Tarrant also asked the CPS General Counsel to report improper conduct between LSC members and the Cook County Board President. *Id.* at ¶¶ 39–40. No such report was made. *Id.* at ¶ 42. Ms. Tarrant's superior then asked her again to change the Dunbar report. *Id.* When she refused again, her superior removed evidence of misconduct herself. *Id.*

Following the allegations made by CPAA, CPS changed their policy to require remediation of principals rather than removal. *Id.* at ¶ 44. Because of this change in policy, Ms. Tarrant was not allowed to remove any CPS employees based on evidence of misconduct. *Id.* During this time Ms. Tarrant was also urged to "alter or delay investigations, or to avoid opening cases altogether." *Id.*

### C. Steinmetz Investigation

Ms. Tarrant continued to receive pressure from her superiors to alter her investigative reports and evade confidentiality requirements. *Id.* at ¶¶ 47-52. Around June 2025, Ms. Tarrant investigated Steinmetz High School after receiving a complaint that a member of the LSC in that community was not a resident of the district as required. *Id.* at ¶ 53. During her investigation, she found that the complained of LSC member had contracts with multiple CPS schools through which she received sizeable payments over the years. *Id.* at ¶¶ 57–59. Ms. Tarrant's investigation also revealed that the complained of LSC member's father, brother, and husband were employed by CPS. *Id.* at ¶ 60. In Ms. Tarrant's professional opinion, these behaviors constituted serious violations of CPS policy and possibly criminal violations. *Id.* at ¶ 62. Ms. Tarrant informed the Office of the Inspector General

and her immediate supervisor about her concerns. *Id.* at ¶¶ 62–63, 66. On June 9th, 2025, Ms. Tarrant attended a meeting with various members of the Law Department and stated that she would be opening an investigation into Steinmetz High School and the LSC member. *Id.* at ¶ 68.

### D. Alleged Termination

During the following work week, on June 17th, 2025, Ms. Tarrant's direct supervisors called her into a meeting with a representative from Human Resources ("HR"). *Id.* at ¶ 78. During this meeting, Ms. Tarrant's supervisor informed her she was being suspended from her position, effective immediately, based on a claim of discrimination by a fellow, unidentified, employee, and because of "other serious misconduct." *Id.* In this meeting, Ms. Tarrant's supervisor stated that Ms. Tarrant's EOCO complaint against her (the supervisor) was being referred to a law firm. *Id.* at ¶ 79. Ms. Tarrant felt concerned by this statement, because under normal procedures, the EOCO, rather than the subject of the complaint, referred the investigation to outside counsel. *Id.* Ms. Tarrant's supervisor also provided her with a severance agreement with a three-day deadline to accept the benefits offered. *Id.* at ¶ 80. Ms. Tarrant did not sign the severance agreement at that time. *Id.* at ¶ 83. That same day, Ms. Tarrant's access to the CPS Law Department was revoked and her supervisor directed her to hand over her CPS laptop and CPS cell phone. *Id.* at ¶¶ 81–82. Two days later, Ms. Tarrant was suspended from regular CPS payroll, and CPS terminated her health insurance. *Id.* at ¶¶ 84–85.

On July 18th, 2025, Ms. Tarrant emailed her formal resignation to the Deputy Chief of Talent, and other senior employees at CPS. Dkt. 22 at *6. In the email, Ms. Tarrant stated that her circumstances "constitute[d] a constructive discharge." *Id.* In her resignation letter, Ms. Tarrant details the events that led her to terminate her employment with CPS, asserting that these actions amount to a constructive discharge due to an "intolerable, retaliatory, coercive, and financially unsustainable" environment. *Id.*

– 4 –

Ms. Tarrant filed the present complaint against the BOE alleging violation of the Illinois Whistleblower Act, Common Law Retaliatory Discharge, and multiple violations of Title VII. *See* SAC. BOE now moves to dismiss Ms. Tarrant's Common Law Retaliatory Discharge Claim (Count II) pursuant to Federal Rules of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving motions under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

## DISCUSSION

Mr. Tarrant's SAC contains seven counts. SAC ¶¶ 100–152. BOE only moves to dismiss her retaliatory discharge claim outlined in Count II. BOE argues that, because Ms. Tarrant was not actually terminated from her employment, or discharged, she has therefore failed to state a cognizable claim for retaliatory discharge. Dkt. 22 at *2.

In Illinois, to prove a claim of retaliatory discharge, a plaintiff must demonstrate that she was (1) discharged; (2) in retaliation for [her] activities; and (3) that the discharge violates a clear mandate of public policy. *Belline v. K-Mart Corp.*, 940 F.2d 184, 185 (7th Cir. 1991) (citing *Hinthorn v. Roland's of Bloomington*, 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911 (Ill. 1988)). Retaliatory discharge requires that the plaintiff actually have been discharged by the employer. *Arias v. CITGO Petroleum Corp.*, 17-cv-08897, 2019 WL 4735391, at *6 (N.D. Ill. Sept. 27, 2019) (Wood, J.) (citing *Hartlein v. Ill. Power Co.*,

601 N.E.2d 720, 730 (Ill. 1992)). Voluntary resignation is not the same as being terminated for purposes of retaliatory discharge. *Arias*, 2019 WL 4735391 at *6.

By contrast, a claim of constructive discharge requires a plaintiff to show that their working conditions were "so intolerable that a reasonable person would have felt compelled to resign. *Patton v. Keystone RV Co.*, 455 F.3d 812, 818 (7th Cir. 2006). The Illinois Supreme Court has thus far declined to recognize a cause of action for retaliatory constructive discharge and has repeatedly held that the tort of retaliatory discharge does not encompass any behavior other than actual termination of employment. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 708 (7th Cir. 2004) (internal citations omitted).

Defendant seeks dismissal under only the first requirement, asserting that Plaintiff actually alleges a "constructive discharge," as opposed to a termination, which is not actionable under a retaliatory discharge theory. Specifically, BOE emphasizes that Ms. Tarrant fails to state any facts demonstrating that she was actually terminated from her employment; instead, one month after Ms. Tarrant was placed on indefinite suspension pending investigation—she tendered her "formal resignation" to Defendant. Dkt. 22 at *6. BOE concludes, because Ms. Tarrant's resignation constituted, at most, constructive discharge, rather than an actual termination of her employment, her retaliatory discharge claim is untenable *See id.* at *1–2 (citing *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 742, 742 N.E.2d 858, 864 (Ill. App. Ct. 2000) (1st Dist.) "[t]he tort of retaliatory discharge does not encompass any behavior other than actual termination of employment.").

In her response, Ms. Tarrant argues her resignation, tendered a month after she was actually terminated, does not make her retaliatory discharge claim implausible as a matter of law and urges the Court to allow her claim to proceed to discovery prior to dismissing her claim. Dkt. 34 at *5 (citing *Bogosian v. Bd. of Educ. of Cmty. Unit Sch. Dist.* 200, 134 F. Supp. 2d 952, 959 (N.D. Ill. 2001) (Pallmeyer, J.) (holding that a subsequent resignation, after plaintiff was told not to show up for work and where

– 6 –

his paychecks ceased, did not make his tortious interference with contract claim implausible). Additionally, Ms. Tarrant relies on *Hinthorn v. Roland's of Bloomington, Inc.* to support her contention that the factual circumstances surrounding her case are sufficient in proving an actual discharge. 519 N.E.2d at 531.

The Court agrees with Defendant that Ms. Tarrant, at most, is asserting a theory of constructive discharge. As explained, A constructive discharge occurs when an employee resigns because of "unendurable working conditions." *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). Ms. Tarrant's own resignation letter outlines "unendurable working conditions" such as an "intolerable, retaliatory, coercive, and financially unsustainable" environment that led her to tender her resignation. Dkt. 22 at *6. Ms. Tarrant's description of "intolerable," and "retaliatory" working conditions, and her very own admission that her "circumstances [ ] constitute a constructive discharge," makes clear that she is in fact alleging constructive discharge, here. Absent any proof of actual termination, her claim cannot survive.

Furthermore, Plaintiff's reliance on *Hinthorn v. Roland's of Bloomington, Inc.* and *Bogosian v. Board of Educ.* of *Community Unit School District* does not salvage her claim. In *Hinthorn*, plaintiff alleged that "she resigned involuntarily only because she was explicitly directed to do so by her employer." 519 N.E. 2d at 530. There are no such allegations here. In addition, *Hinthorn* predates the holding of *Graham*, which, again stated that "[t]he tort of retaliatory discharge does not encompass any behavior other than actual termination of employment." 742 N.E.2d 858 at 864. As to *Bogosian*, a summary judgment case, the dicta Plaintiff cites was in reference to a claim of tortious interference with a contractual relationship, not retaliatory discharge. *See* 134 F. Supp.2d 952, 959 (N.D. Ill. Feb. 22, 2021). Additionally, *Bogosian* also relied on *Hinthorn*, which, again, predated the holding in *Graham* and is, therefore, not applicable here.

Accordingly, because Ms. Tarrant was, at most, constructively discharged, the Court dismisses her retaliatory discharge claim. Additionally, because Plaintiff has not alleged she was discharged, the Court declines to address the remaining elements of her retaliatory discharge claim.

## CONCLUSION

For the foregoing reasons, the Court grants Chicago Board of Education's Motion to Dismiss Ms. Tarrant's claim of common-law retaliatory discharge (Count II) [21]. The remaining claims Defendant did not move to dismiss, stand.

**IT IS SO ORDERED.**

Date: 7/10/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

– 8 –